**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ROGER LESTER,

                           Plaintiff,

          v.                               No. 03-CV-810

JO ANNE B. BARNHART, Commissioner              (LEK/DRH)
of Social Security,

                           Defendant.
_____

**APPEARANCES:**                    **OF COUNSEL:**

ANDERSON & BURAN PC          ARTHUR P. ANDERSON, ESQ.
Attorney for Plaintiff
106 Main Street
Post Office Box 1624
Burlington, Vermont 05402-1624

HON. GLENN T. SUDDABY         WILLIAM H. PEASE, ESQ.
United States Attorney for the        Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Post Office Box 7198
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff Roger Lester ("Lester") brought this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("Commissioner")

denying his application for benefits under the Social Security Act. Lester moves for a finding

of disability and the Commissioner cross-moves for a judgment on the pleadings. Docket

_____

    [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

Nos. 11, 16. For the reasons which follow, it is recommended that the Commissioner's decision be remanded for further proceedings.

## I. Procedural History

On June 9, 1997, Lester filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 202-07.[2] That application was denied after the initial determination and following reconsideration. T. 120-24, 128-31. Lester requested a hearing before an administrative law judge (ALJ), T. 126, which was held before ALJ Joseph F. Gibbons on March 25, 1999. T. 84-115.  Lester was represented by counsel. T. 20.  In a decision dated May 18, 1999, the ALJ denied Lester's claims. T. 21-32. On January 25, 2002, the Appeals Council remanded the matter for further review. T. 165-67.  On September 25, 2002, a second hearing was held and on February 24, 2003, the ALJ again denied Lester's claims. T. 9-19, 37-82. On May 15, 2003, the Appeals Council denied Lester's request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 3-6. This action followed.

## II. Contentions

Lester contends that the ALJ erred in finding that he had the ability to perform sedentary work, failed to find that his impairment equaled a listed impairment, and that there is not substantial evidence to support a finding that Lester was not disabled. The Commissioner contends that there is substantial evidence in the record to support a finding

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 6.

that Lester was not disabled.

### III. Facts

Lester is now thirty-nine years old, previously worked as a custodian and maintenance worker, and has a high school diploma. T. 116, 233, 388. Lester alleges that he became disabled on January 11, 1990 due to a back injury, diabetes, and dyslexia. T. 41, 229.

### IV.  Standard of Review

### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2002).  In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's  age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2002).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he [or she] is

3

> not, the [Commissioner] next considers whether the claimant has
> a 'severe impairment' which significantly limits his [or her]
> physical or mental ability to do basic work activities.  If the
> claimant suffers such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations.  If
> the claimant has such an impairment, the [Commissioner] will
> consider him [or her] disabled without considering vocational
> factors such as age, education, and work experience; the
> [Commissioner] presumes that a claimant who is afflicted with a
> 'listed' impairment is unable to perform substantial gainful
> activity.  Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he [or she] has the residual functional
> capacity to perform his [or her] past work.  Finally, if the claimant
> is unable to perform his [or her] past work, the [Commissioner]
> then determines whether there is other work which the claimant
> could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2005).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform.  Id.

### B. Scope of Review

The reviewing court must determine if the commissioner has applied the proper legal standards and if the decision is supported by substantial evidence.  Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at 131 (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971)

4

(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Curry v. Apfel, 209

F.3d 117, 122 (2d Cir. 2000). The ALJ must elaborate specific factors to allow the reviewing

court to determine whether substantial evidence supports the decision. Ferraris v. Heckler,

728 F.2d 582, 587 (2d Cir. 1984).  If the Commissioner's finding is supported by substantial

evidence, it is conclusive and on review, the court cannot substitute its interpretation of the

administrative record for that of the Commissioner.  Yancey v. Apfel, 145 F.3d 106, 111 (2d

Cir. 1998); Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).


## V.  Discussion

### A. Medical Evidence

On January 11, 1990, while working at a nursing home, Lester injured his back while

lifting a heavy bag of laundry. T. 279-80. Lester was treated by Dr. John Boice from January

17 to March 29, 1990. T. 281-86. Lester reported that the pain had improved on the right

side but continued to increase on the left with radiation into the left groin. T. 286. Lester was

prescribed Flexoril and Motrin. T. 286. The impression was bilateral low back strain with

possible nerve root compression. T. 286.  Dr. Boice also noted that Lester was insulin-

dependent with diabetes. T. 286.

In March 1990, Lester continued to have back pain which radiated down the left leg,

he had full range of spinal motion, sensation was normal and symmetrical, straight-leg

raising was to 90° bilaterally, there was a slight loss of lumbar lordosis, and motor strength

was normal. T. 281-855.  Dr. Boice opined that Lester had a total disability for the purposes

of Workers' Compensation.[3] T. 281, 287-90. Dr. Craig DuMond, an orthopedic surgeon, examined Lester on February 28, 1990. T. 279-80. The impression was discgenic back pain and possible lumbar radiculopathy. T. 279. An X-ray showed a slight curvature of the lumbar spine. T. 279. Dr. DuMond found Lester totally disabled for the purposes of Workers' Compensation. T. 278.

Lester was treated at Adirondack Family Chiropractics by Drs. Joseph Clauss and Carolyn Clauss from June 8, 1990 until January 25, 1999. T. 461-602. In December 1997, Dr. Joseph Clauss found that Lester was limited to lifting fifteen-to-twenty pounds, could stand or walk up to two hours a day, could sit less than six hours a day, was limited in his ability to push and pull, and classified Lester as permanently partially disabled. T. 466. The diagnosis was herniated disc, low back pain, lumbar neuritis,[4] and subluxation of the lumbar spine. T. 461-62. Lester ambulated without assistance but his gait was severely compromised, cervical range of motion was normal, and lumbar range of motion was restricted. T. 557-59, 597-98. The Clausses opined that X-rays in October 1991 and April 1997 showed a loss of the normal cervical and lumbar lordotic curve with cervical spine instability, hyperlordis,[5] and nerve root compression. T. 471, 560.

_____

[3] "Workers' compensation determinators are directed to the worker's prior employment and measure the ability to perform that employment rather than using the definition of disability in the Social Security Act." Gray v. Chater, 903 F. Supp. 293, 301 n.8 (N.D.N.Y. 1995).

[4] Neuritis is the "inflammation of a nerve, with pain and tenderness, anesthesia and paresthesias, paralysis, wasting, and disappearance of the reflexes." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1127 (28th ed. 1994) [hereinafter DORLAND'S]

[5] "[T]he anterior concavity in the curvature of the lumbar and cervical spine." DORLAND'S 960.

Dr. William Bronk conducted an orthopaedic examination of Lester on September 14, 1990. T. 293-94. Lester was enrolled in culinary school, his pain was improved, and he complained of low back and neck pain. T. 293. Lester did not walk with a perceivable limp. was able to bend forward to 80º, there was excellent mobility, no paravertebral muscle spasm was noted, he was able to walk on toes and heels without evidence of gross motor weakness, knee and ankle reflexes were intact, and straight leg raising was normal. T. 294. The diagnosis was resolving low back strain with no evidence of disc herniation, the degree of disability was mild partial, and Lester was responding to chiropractic treatment. T. 294.

Dr. Bronk examined Lester again on June 21, 1991. T. 291-92. Lester had stopped culinary school due to back and hip pain, complained of radiating pain down his left leg and numbness in both legs, and was able to bend forward 40º. T. 291-92. Straight-leg raising was normal, alternate toe and heel walking did not show any gross motor weakness, and knee and ankle reflexes were intact. T. 292. However, Lester did not appear to be improving, was not responding to chiropractic treatments, and his degree of disability was now moderate partial. T. 292.

Dr. Domenick J. Rizzuto, a chiropractor, evaluated Lester on August 24, 1991. T. 295-97. Lester complained of lower and mid-back pain and neck pain which radiated into the left arm. T. 295. Spinal range of motion was limited and there was a moderate loss of the normal intervertebral motion, sensory findings were within normal limits, and deep tendon reflexes of the lower extremities were mildly depressed on the left. T. 296. X-rays from November 2, 1990 and May 15, 1991 demonstrated a mild loss of the cervical lordotic curve and moderate hyperlordosis of the lumbar spine, and left lumbar curvature. T. 296. Dr. Rizzuto opined that Lester had a significant soft tissue pathology which produced

7

discogenic symptoms with radiculopathy and recommended continuation of chiropractic care. T. 297.

Dr. Nicholas Teresi evaluated Lester on May 15, 1992 for Workers' Compensation purposes. T. 298. Lester complained of continued back pain and little relief with chiropractic adjustments. T. 298. Curvature of the spine was normal, there was no spasm or rigidity of the lumbar muscles, there was mild tenderness in the lumbrosacral area, mild restrictions on flexion, moderate restriction on extension and lateral mobility of the spine, straight-leg raising was positive bilaterally, left knee jerk was decreased and right knee jerk was normal, and ankle jerks were present and equal bilaterally. T. 299. The conclusion was moderate-to-marked permanent disability for Workers' Compensation purposes and Dr. Teresi recommended treatment at a chronic pain clinic. T. 299.

Dr. Frank Bell conducted chiropractic consultations of Lester on July 9, 1993, April 29, 1995, and December 1, 1995. T. 303-310. Curvature of the spine was normal, palpation revealed moderate-to-severe muscle spasm and tenderness, straight-leg raising was positive, pin prick testing did not reveal any sensory deficit, and flexion and extension of the spine were restricted. T. 307-09. The impression was lumbar subluxation with low back pain and sciatica with intervertebral disc involvement. T. 309.

Dr. Murial Nathan treated Lester for diabetes from January 21, 1996 to October 15, 2002. T. 311, 325, 341-77, 641-700, 766-830. Lester had diabetes since and began insulin pump therapy in October 1996. T. 325, 341-48, 369. Prior to the use of the insulin pump, Lester had low blood sugar which required emergency room treatment. T. 341. Lester showed significant improvement and was stable using the insulin pump. T. 341, 648. On October 17, 2002,  Dr. Nathan found that Lester did not have any diabetic neuropathy, had

8

an inability to detect low glucose sensory changes, no acidiosis, no impairment of central visual acuity, and no loss of visual efficiency. T. 830.

Dr. Robert Mullaney evaluated Lester for rapid pulse and diabetes on July 8, 1997. T. 411-14. There was mild tachycardia, the assessment was well-controlled diabetes, an echocardiogram was within normal range except for borderline elevation, and a chest X-ray showed that the heart was within normal limits and the lungs were clear with the exception of some minor scarring. T. 411-14.

Dr. George M. Mina conducted a consultive examination of Lester on August 18, 1997. T. 410. Lester complained of pain but ambulated well without a limp, there was no muscle spasm or atrophy, he was extremely tender to light palpation over the entire back, could stand on his toes and heels, his range of motion was restricted, and X-rays showed minimal narrowing of the L5-S1 disc space but were otherwise unremarkable. T. 410. The diagnosis was low back strain and Dr. Mina found that Lester could sit for six hours, stand for one-to-two hours, walk for one mile, bend and lift objects up to twenty five pounds, go up and down stairs, get in and out of a car, ride public transportation, and that fine manipulation of both hands was not impaired. T. 410.

Dr. David Welch conducted a consultative physical examination of Lester on May 17, 2002. T. 724-26. Lester walked with a limp but was able to walk on heels and toes, range of motion was normal, motor strength was within a functional range, there was a slight decrease in the normal lumbar lordosis, he did not tolerate extension of the back, there was no paravertebral spasm, there was tenderness over the lumbrosacral junction, and the upper back, neck, and shoulder area were unremarkable. T. 725. Reflexes, motor function, and sensation were intact, and there was no evidence of diabetic neuropathy. T. 725. Dr.

9

Welch opined that there may be a question of secondary gain and felt that Lester could handle light or sedentary activities but needed to avoid tasks that included climbing or had him on his feet for prolonged periods, and that Lester could occasionally lift and carry twenty pounds, and could frequently lift and carry ten pounds. T. 725.

On March 22, 1999, Dr. Glenn S. Schroyer examined Lester and found that Lester continued to have pain, muscle spasms, and significant limitation of motion of the spine which was expected to continue indefinitely. T. 705. On September 5, 2002, Dr. Schroyer found that Lester could occasionally carry but not lift less than ten pounds, could stand, walk, and sit less than two hours in an eight hour workday, and could never climb or balance, kneel, crouch, crawl, or stoop. T. 737-40. Dr. Schroyer also found that Lester had pain, muscle spasm, significant limitation of motion in the spine, and appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. T. 740.

A physical residual functional capacity (RFC) assessment found that Lester could occasionally lift and carry twenty pounds, could frequently lift and carry ten pounds, and could stand, walk, and sit six hours in an eight-hour workday. T. 415-22. A second physical RFC assessment found that Lester could occasionally lift and carry twenty pounds, could frequently lift and carry ten pounds, and could stand, walk, and sit six hours in an eight-hour workday, and could occasionally climb, balance, stoop, kneel, crouch and crawl. T. 440-47. A medical source statement found that Lester could occasionally lift and carry twenty pounds, could frequently lift and carry less than ten pounds, could stand, could walk two hours in an eight-hour workday, had no restrictions in sitting, could never climb or balance, and could occasionally kneel, crouch, crawl, and stoop. T. 728.

10

Dr. Gina Scarano-Osika conducted a psychiatric evaluation of Lester on May 13, 2002 and the impression was mood disorder with depression and anxiety secondary to diabetes in partial remission, a possible learning disability, and borderline intellectual function by history. T. 720. Dr. Scarano-Osika recommended chronic pain treatment but noted that no mental health treatment appeared to be needed. T. 721.

On August 2, 1997, Dr. Richard Liotta conducted a psychiatric consultative examination of Lester. T. 404-409. Lester had a verbal intelligence quotient (IQ) of 84, a performance IQ of 76, and a full-scale IQ of 78 which placed him in the borderline range of intellectual functioning. T. 406. Lester had difficulty reading and writing and visual motor speed was impaired. T. 407. Lester was unable to do serial sevens, was able to do serial threes with long pauses, and required effort to function adequately on cognitive tasks. T. 408. The diagnosis was anxiety disorder with limited symptom panic attacks which might be influenced by his medical condition, a reading disorder, possible writing disorder, learning disabilities, and borderline intellectual functioning. T. 408.

## B. RFC

Lester contends that the ALJ erred in finding him capable of sedentary work and that there is not substantial evidence to support a finding that he could sit six hours. The Commissioner contends that substantial evidence supports the ALJ's RFC determination.

RFC describes what a claimant is capable of doing despite his or her impairments. 20 C.F.R. § 404.1545(a) (2005). "RFC is determined by considering all relevant evidence consisting of, inter alia, [the claimant's] physical abilities, symptoms including pain . . . [or other] limitations which go beyond symptoms." Martone v. Apfel, 70 F. Supp. 2d 145, 150

11

(N.D.N.Y. 1999) (Hurd, J.) (citing 20 C.F.R. §§ 404.1545, 416.945 (1991)).  "RFC can only

be established when there is substantial evidence of each physical requirement listed in the

regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (Hurd, J.) (citing

LaPorta v. Bowen, 737 F. Supp. 180, 183 (1990)).  In assessing RFC, the ALJ must make

findings specifying what functions the claimant is capable of performing, not simply making

conclusory statements regarding a claimant's capabilities. Martone, 70 F. Supp. 2d at 150.

RFC is then used to determine whether the claimant can perform his or her past relevant

work or other work in the national economy. State of N.Y. v. Sullivan, 906 F.2d 910, 913

(2d Cir. 1990); see generally 20 C.F.R. §§ 404.1520, 416.960.

The ALJ found that Lester had the RFC to perform the physical exertion and non-

exertional requirements of sedentary work except for lifting over twenty pounds occasionally

and ten pounds frequently, constant standing and walking, and frequent bending. T. 18.

Sedentary work requires that a claimant be capable of "lifting no more than 10 pounds at a

time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.

Although a sedentary job is defined as one which involves sitting, a certain amount of

walking and standing is often necessary in carrying out job duties. Jobs are sedentary if

walking and standing are required occasionally and other sedentary criteria are met." 20

C.F.R. § 416.967(a); Kamerling v. Massanari, 295 F.3d 206, 208 n.2 (2d Cir. 2002).

Dr. Carolyn Clauss, a treating chiropractor, found that Lester could occasionally carry

but not lift less than ten pounds, could stand, walk, and sit less than two hours in an eight-

hour workday, could never climb or balance, and could occasionally kneel, crouch, crawl,

and stoop. T. 740-44. The ALJ rejected the opinion of Dr. Clauss because it was

inconsistent with the unremarkable medical findings,, and because a chiropractor's opinion

was not an acceptable medical source.

Dr. Schroyer found that Lester could occasionally carry but not lift less than ten pounds, could stand, walk, and sit less than two hours in an eight-hour workday, had no restrictions in sitting and could never climb or balance, kneel, crouch, crawl, or stoop. T. 737-40. Dr. Schroyer also opined that a physical examination showed that Lester had limitation on flexion of the lumbar spine to 30º of flexion, that Lester continued to have pain, muscle spasms, and significant limitation of the spine which was expected to continue indefinitely. T. 705. The ALJ rejected this opinion and noted that any medical report from Dr. Schroyer that would support his opinion could not be located in the record and that Lester had only recently started treatment. T. 18.

Before discounting the opinion of a treating source, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998). There are no treatment records from Dr. Schroyer in the record, no indication as to the treating relationship, and as the ALJ noted, there is no examining report in the record to support his finding. The ALJ had an affirmative duty to develop the record even when a claimant was represented by counsel, where gaps exist by seeking additional information from a treating physician. 20 C.F.R. § 416.929(c)(4); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) (citing Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996). Here, the ALJ failed to seek additional information as to Dr. Schroyer's treating relationship and rejected his opinion without giving "good reasons."

The ALJ noted that it appeared that Lester had just started treatment with Dr. Schroyer, but there is no evidence in the record as to when treatment started. If Dr. Schroyer was in fact a treating source, the ALJ failed to give "good reasons" for rejecting his opinion that Lester was limited in sitting, especially since it was supported by the opinion of

13

another treating source, Dr. Clauss. In addition, Dr. Schroyer based his findings on an MRI report which was not made part of the record,

The other opinions that the ALJ relied on are two examining physicians and three non-examining physicians. Dr. Mina, an examining physician, found that Lester could sit for six hours, stand for one-to-two hours, walk for one mile, and bend and lift objects up to twenty-five pounds. T. 410. Dr. Welch, an examining physician, opined that there may be a question of secondary gain and felt that Lester could handle light or sedentary activities, could occasionally lift and carry twenty pounds, and could frequently lift and carry ten pounds. T. 725.

A physical RFC found that Lester could occasionally lift and carry twenty pounds, could frequently lift and carry ten pounds, and could stand, walk and sit six hours in an eight-hour workday. T. 415-22. A physical RFC assessment found that Lester could occasionally lift and carry twenty pounds, could frequently lift and carry ten pounds, and could stand, walk, and sit six hours in an eight-hour workday, and could occasionally climb, balance, stoop, kneel, crouch and crawl. T. 440-47. A medical source statement of physical abilities found that Lester could occasionally lift and carry twenty pounds, could frequently lift and carry less than ten pounds, could stand, walk two hours in an eight-hour workday, had no restrictions in sitting, could never climb or balance, and could occasionally kneel, crouch, crawl, and stoop. T. 728.

Thus, while the ALJ failed properly to address the opinions of Lester's treating sources and erred in leaving gaps in the record as to Dr. Schroyer's treatment, there was also evidence to the contrary of the treating sources' opinions.  Accordingly, remand is appropriate for further evaluation by the ALJ as to the specific nature of the treating

relationship between Lester and Dr. Schroyer and the expansion of the record as to Dr.

Schroyer's treatment records.

### C. Listing of Impairments

Lester contends that the ALJ erred when he failed to find that his impairment

equaled Listing 1.05C. The Commissioner contends that this listing was not in effect when

the Commissioner's decision became final and that Lester's impairment did not meet or

equal the new listing.

As described above, once the ALJ finds that the claimant has a severe impairment,

the next step is to determine whether the claimant has an impairment which is listed in

Appendix 1 of the regulations. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); 20

C.F.R. § 416.920 (2005). If the ALJ finds that a claimant has an impairment in the listing,

then the claimant is considered  disabled without considering vocational factors such as

age, education, and work experience and an inability to perform substantial gainful activity

is presumed. Berry, 675 F.2d at 467; 20 C.F.R. § 416.920 (2005). An impairment is

medically equal to a listed impairment "if the medical findings are at least equal in severity

and duration to the listed findings" based on medical evidence, including clinical and

laboratory diagnostic techniques. 20 C.F.R. § 416.926 (2004).

New listings regarding disorders of the spine became effective on February 19, 2002.

66 Fed. Reg. 58,010 (Nov. 19, 2001); 20 C.F.R. Pt. 404. Subpt. P, App. 1 § 105 (disorders

of the spine). The Social Security Administration, in promulgating these new regulations,

noted:

> [a]s is our usual practice when we make changes to our

> regulations, we will apply these final rules to the claims of applicants for benefits that are pending at any stage of our administrative review process . . . With respect to claims in which we have made a final decision, and that are pending judicial review in federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision.

66 Fed. Reg. at 58011.

On February 19, 2002. Lester's application was still pending in the administrative review process and was awaiting a second hearing.[6]  The final decision in Lester's case was May 16, 2003, when the Appeals Council denied his request for review. T.3-6. Therefore, the listing in effect at the time Lester's application was pending was new listing 1.04A. In order for a claimant's disorder to meet or equal this listing, the impairment must have resulted in compromise of a nerve root or the spinal cord with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. § 404, Subpt. P, App.1, § 1.04A (2005).

The ALJ found that the objective findings did not support a conclusion that Lester's impairments were of the degree of severity of any listed impairment. There is substantial evidence in the record to support this finding. While Dr. Schroyer, Dr. Clauss, and a non-examining physician found appropriate radicular distribution of significant motor loss with

---

[6] The administrative review process consists of several steps which include an initial determination, reconsideration, a hearing before an ALJ, and Appeals Council review. 20 C.F.R. § 404.900(a). A final decision is made once the Appeals Council has rendered its decision. Id.

motor weakness and sensory and reflex loss, only Dr. Clauss indicated that there was any nerve root compression. T. 153, 301, 748. Several examining physicians found that Lester's motor strength, sensation, sensory findings, and deep tendon reflexes were normal, that there were no spasms, rigidity, muscle atrophy, or motor sensory deficiency, no gross motor weakness, and motor strength was within functional range. T. 175, 279, 284-86,  292, 294, 296, 299, 304, 314.

While pain did radiate and there was mild-to-moderate limitation in range of motion of the spine, Lester also showed good range of motion on several occasions. T. 279, 283-85, 296, 307 471. Straight-leg raising was normal on several occasions and positive on several occasions from 40º to 80º. T. 279, 292, 294, 296,  299, 410. In addition, there were no objective findings to indicate compromise of a nerve root or spinal cord. CT scans and discograms were normal and X-rays showed minimal narrowing of disc plates, but overall were unremarkable. T. 301, 740. Lester was not treated by a neurologist and had no physical therapy or surgery.

Therefore, the Commissioner's finding in this regard should be affirmed.


### D. Medical Vocational Guidelines

Lester contends that the Commissioner did not meet the burden of proving that he could perform alternative work.  The Commissioner contends that the ALJ properly found Lester not disabled at step five.

Where, as here, a claimant is able to demonstrate that his or her impairment prevents a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing. See

17

Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. § 404.1560(c) (2005). In

evaluating disability, the severity of the impairments, RFC, past work, age, education, and

work experience are considered. 20 C.F.R. § 404.1520.  The ALJ may apply the Medical-

Vocational Guidelines ("Grids") or consult a vocational expert. See Heckler v. Campbell,

461 U.S. 458, 462 (1983); Rosa v. Callahan,  168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt.

404, subpt. P, App. 2 (2003). If the claimant's characteristics match the criteria of a

particular grid rule, the rule directs a conclusion as to whether he or she is disabled. Pratts v

Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).

Specifically, Lester argues that he did not have the capacity for sedentary work and,

therefore, the use of Rule 201.27 was error. In light of the recommendation to remand and

expand the record concerning the opinion of Dr. Schroyer, and the potential this may have

on Lester's RFC for sedentary work, this particular point will not be considered. See

subsection (II)(B) supra. This issue should be reconsidered on remand in light of the

expansion of the record regarding Lester's abilities to do sedentary work and the ALJ's

application of the grids.

The remainder of Lester's arguments as to the Grids relate to non-exertional

categories. The ALJ used the Grids as a guideline and concluded that given Lester's age,

high school education, and unskilled work experience, Lester was not disabled. T. 31.

Lester contends that the ALJ should have used an educational category lower than high

school because this category did not represent his actual ability. The ALJ noted that there

was no treatment for Lester's alleged dyslexia and although Lester may have borderline-to-

low average intellectual functioning, he received a high school diploma and was accepted

into the army. T. 15-17. The ALJ also found that there was no evidence that Lester had any

mental impairment that would pose more than minimal limitations on the ability to function in the workplace. T. 15-17. This assessment as to Lester's intellectual functioning is supported by substantial evidence in the record.

A mental RFC assessment found that Lester was moderately limited in the ability to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods, to set realistic goals or make plans independently of others, and there were no marked limitations that would restrict employability. T. 422-26. A psychiatric review technique form found that Lester had sub-average general intellectual functioning with deficits in adaptive behavior, a reading disorder, an anxiety disorder, and Lester had only a slight degree of functional limitations. T. 426-34.

A second psychiatric review technique form indicated that Lester had significantly sub-average general intellectual functioning but only a slight degree of limitation in activities of daily living, no difficulties in maintaining social functioning, and seldom had deficiencies of concentration, persistence, or pace. T. 33-36. A medical source statement of mental ability found only slight limitations and noted that while Lester had a slightly low-average IQ he could perform work-related tasks with only slight impairment. T. 722-23.

On examination, Lester had a verbal IQ of 84, a performance IQ of 76, and a full-scale IQ of 78, which placed him in the borderline range of intellectual functioning. T. 406. Lester had difficulty reading and writing and his visual motor speed was impaired. T. 408. The diagnosis was a reading disorder, possible writing disorder, learning disabilities, and borderline intellectual functioning. T. 408. Dr. Scarano-Osika found that Lester had a possible learning disability and borderline intellectual function by history. T. 720. A non-examining physician found that Lester had a reading disorder and sub-average general

19

intellectual functioning. T. 405, 724.

Although Lester had borderline intellectual functioning, there was only a slight degree of limitation and only one non-examining physician found that Lester had moderate limitations.  In addition, Lester completed high school and  was in the Army reserves where he served for four years.

Therefore, the finding as to Lester's exertional capabilities only should be remanded for further findings.  The ALJ's findings as to Lester's non-exertional capabilities should be affirmed.


## VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **REMANDED** for further proceedings as described above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Secretary of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  December 16, 2005
        Albany, New York

United States Magistrate Judge